## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF ILLINOIS, ex rel. PAMELA HARRIS, | ) ) ) ) | |
| Plaintiff-Relator, | ) ) | **No. 25 C 1154** |
| v. | ) ) | **Magistrate Judge M. David Weisman** |
| UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

The case is before the Court on the Ancel defendants' Federal Rule of Civil Procedure 12 motion to dismiss the first amended complaint. For the reasons set forth below, the Court denies the motion [ECF 42].

### Facts

Plaintiff-Relator Pamela Harris was "the director of security of the Bureau of Facility Operations to the Department of Assets, Information, and Services ('AIS')" for the City of Chicago, from November 2022 until December 2023. (ECF 34 ¶¶ 8, 13.) In that role, Harris "enforced contracts between the City of Chicago and private security vendors," and was responsible for "approving the monthly invoices submitted by such private security vendors." (*Id.* ¶¶ 11–12.) Harris's supervisor was Glen Cross, a Deputy Commissioner with AIS. (*Id.* ¶ 20.)

Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Services is the successor to G4S Secure Solution, which entered into a contract with the City to provide unarmed security guards at Chicago Public Libraries from September 1, 2006 until January 24, 2024. (ECF 42-2, Newberry Decl. ¶¶ 2-7.)

In March 2023, Harris received an invoice from Allied Security for work it had performed in January 2023. (ECF 34 ¶ 15.) Harris refused to pay the invoice because the contract between Allied and the City "required Allied to submit sign-in sheets signed by guards to prove the service had been provided," which Allied did not do. (*Id.* ¶¶ 17-18.) Allied said that Cross, Harris's supervisor, had allowed it to submit unsigned electronic timesheets. (*Id.* ¶¶ 20-23.) Harris alleges that Cross did not have the authority to permit Allied to submit electronic timesheets, and Allied knew it. (*Id.* ¶¶ 22, 38.) When Harris compared the electronic timesheets to reports from City building mangers about security guards not showing up for work, she discovered that Allied had

overbilled the City by approximately $15,000.00 in the month of January 2023. (*Id.* at ¶¶ 28-29.) When Harris told Allied there was overbilling, Allied reduced its invoice by approximately $21,000.00 (*Id.* ¶¶ 30-31.) Harris reported the overcharging to Deputy Commissioner of Finance Raquel Rodriguez and Contract Coordinator Carmen Rocha. Rodriguez and Rocha agreed there should be an audit, and Rodriguez said she would ask her supervisor to approve one. (*Id.* ¶¶ 33-34.) No audit was performed. (*Id.* ¶ 36.) Allied submitted electronic time sheets until May 2023, when it began submitting paper sign-in sheets.

On January 23, 2024, the City sent a letter to Allied listing the events of default that occurred under the contract. (ECF 34-2.) Among the events of default listed in the letter are:

Failing to provide accurate timesheets in violation of Section 11.7 of the Contract

Section 11.7 of the Contract requires Allied to "be responsible for monthly submissions of accurate weekly time sheets signed by the employees and the authorized representative identified by DGS or User Department. Backup documentation to each invoice must include time sheets." Allied has repeatedly provided inaccurate timesheets to the City that reflect more hours than were performed by Allied. On May 10, 2023, Allied informed the City it would be unable to submit written time sheets, as required by 11.7 of the Contract, for February 2023, March 2023, and April 2023.

Failing to provide accurate invoices in violation of Section 11.7 of the Contract

Although Section 11.7 of the Contract requires Allied to "submit an original invoice on a monthly basis, for work completed the prior month," the invoices provided to the City have been routinely inaccurate and have contained billing for services that Allied did not provide to the City.

On May10, 2023, after the City flagged Allied had submitted inaccurate invoices, Allied conducted review of its invoices and submitted revised invoices. On May 12, 2023, the City then met with Allied to discuss the revised invoices. The City highlighted that the revised invoices contained no supporting documentation. Further, although the revised invoices did contain a $15,000 reduction, the invoices were still inaccurate. Allied acknowledged the $15,000 reduction in invoices was provided after Allied reviewed emails and saw they had initially billed the City for services Allied had not provided.

On November 17, 2023, the City met with Allied to discuss inaccurate invoices Allied had submitted. On November 21, 2023, via email, the City informed Allied reviewing the June invoices, Allied had overbilled the City at ten locations by the following amounts: North Pulaski (91 hours); Near North (8 hours); Mayfair (8 hours); Douglass (4 hours); Whitney Young (4 hours); Rogers Park (52 hours); Coleman (7.58 hours); Kelly (8 hours); Archer Heights (1 hour); and Edgebrook (1 hour).

(*Id.*)

2

**Discussion**

"A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations . . . [but] a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "'The factual allegations contained within a complaint must 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Gunawardana v. Am. Veterinary Med. Ass'n*, 515 F. Supp. 3d 892, 901 (S.D. Ill. 2021), *aff'd*, No. 21-1330, 2021 WL 4951697 (7th Cir. Oct. 25, 2021) (quoting *Twombly*, 550 U.S. at 554-55).

Rule 9(b) requires that a fraud claim be "state[d] with particularity." Fed. R. Civ. P. 9(b). "A complaint alleging fraud must provide 'the who, what, when, where, and how'" of the fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *U.S. ex rel. Gross v. AIDS Research Alliance–Chi.*, 415 F.3d 601, 605 (7th Cir. 2005) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Relator alleges claims under the Illinois False Claims Act.[1] "To survive a motion to dismiss, a [False Claims Act] relator must allege that (1) defendant made a false claim or statement to receive money from the government, (2) the violation proximately caused the alleged injury, (3) defendant knew the claim or statement was false, and (4) defendant's misrepresentation was material to the government's payment decision." *U.S. ex rel. Enloe v. Heritage Ops. Group, LLC*, 622 F. Supp. 3d 679, 687 (N.D. Ill. 2022) (citations omitted). *See also U.S. ex rel. Calderon v. Carrington Mortg. Servs.*, 70 F.4th 968, 973 (7th Cir. 2023) (stating that False Claims Act elements are falsity, knowledge, materiality, and causation).

As an initial matter, Allied notes that the False Claims Act is not "'an all-purpose antifraud statute,' *Allison Engine* [*Co., Inc. v. U.S. ex rel. Sanders*,] 553 U.S. [662] at 672, 128 S. Ct. 2123 or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2008)." In Allied's view, a garden-variety breach of contract claim is all that relator has alleged.

Relator's allegations may state a breach of contract claim but they go beyond that. Relator alleges that Allied submitted invoices to the City for more than two years without signed timesheets, Allied knew the invoices it submitted violated the contract, the Chief Procurement Officer, who paid Allied's 2021-2022 invoices, did not know that Allied submitted them without signed timesheets, and the City suffered monetary loss as a result. Thus, Relator is not dressing up a contract claim in False Claims Act clothing.

Relator alleges that Allied knew the contract required it to submit invoices for payment with paper sign-in sheets signed by the security guards, but instead it submitted what Allied called electronic timesheets, which were actually a list of assignments, were not signed by the guards, and did not verify the hours they worked. Allied says the contract did not require it to submit paper sign-in sheets, and thus its failure to do so did not breach the contract.

---

[1] The same standards apply to the Illinois False Claims Act and the Federal False Claims Act. *U. S. v. Heritage Operations Grp., LLC*, 622 F. Supp. 3d 679, 686 (N.D. Ill. 2022).

3

It is true that the contract does not explicitly require Allied to submit paper time sheets, but it does require Allied to submit "certified payrolls" and "accurate weekly timesheets signed by the employees and the authorized representatives identified by the Department or User Department." (ECF 34-1 §§ 3.5, 11.7.) Relator alleges that before May 2023, Allied knowingly failed to submit signed timesheets with its invoices, which prevented the City from verifying that the work Allied billed for had actually been performed and allowed Allied to overcharge the City. (ECF 34 ¶¶ 29-31, 62-65.)

Allied argues that those allegations do not state an IFCA claim because relator's supervisor, Glenn Cross, told Allied it could submit electronic time sheets. (*Id.* ¶ 21.) But the contract states: "No changes, amendments, modifications, cancellations, or discharges of this Contract are valid unless stipulated in writing and signed between the Contractor and the authorized representatives of the City of Chicago. (ECF 34- § 3.20.) In relator's words:

> Allied . . . knew its contract with the City required the approval from the Chief Procurement Officer to submit invoices without the required timesheets signed by the guards. While Allied has claimed that it had oral approval from a lower-level city official, [Cross,] Allied's contract with the City specifically requires that such approval to dispense with the handwritten sign-in sheets may come solely from the Chief Procurement Officer. Allied concealed its conduct from the Chief Procurement Officer, who gave no such approval and had no knowledge of Allied's submissions. Allied knew from its contract with the City that no other officer, including Glen Cross, had actual or apparent authority to dispense with the necessary evidentiary certification that the work had been performed.

(ECF 34 ¶ 2.) Thus even if Cross were an authorized representative of the City with respect to the contract, and relator alleges that he was not, he did not put this waiver in writing as the contract requires. (ECF 34 ¶ 23.)

Allied further argues that "timesheets—whether paper or electronic—are not 'claims for payment' within the meaning of the Illinois False Claims Act because they do not assert any request or demand for money." (ECF 42-1 at 5; *see* 740 Ill. Comp. Stat. 175/3(b)(2) (claim "means any request or demand, whether under a contract or otherwise, for money or property . . . that is presented to an officer, employee, or agent of the State.").) That is true, but the contract states that signed time sheets are required backup documentation for the invoices, and "each invoice must include time sheets." (ECF 34-1 § 11.7.) Thus, the contract treats time sheets as part of the invoices, which are claims for payment. Moreover, each invoice Allied submitted without signed timesheets contained an implied false certification that the invoice complied with all contractual requirements, another actionable claim under the IFCA. *See Escobar*, 579 U.S. 176 at 194–95.

Next, Allied argues that the City's payment of its invoices for 2021 and 2022, which were not submitted with signed timesheets, establishes that submission of such timesheets was not material to the City's decision to pay the invoices. *See id.* (stating that evidence relevant to materiality may include that the government "pa[id] a particular claim in full despite its actual knowledge that certain requirements were violated"); (ECF 46 at 11 ("[W]here, as here, the

4

government can and does observe the particulars of a claim before authorizing payment, its decision to pay forecloses any inference of falsity or materiality.") (citing *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 (7th Cir. 1999)). Relator does not allege, however, that the City official who paid Allied's 2021-2022 invoices knew Allied submitted them without signed timesheets as the contract required. Thus, relator has adequately alleged the materiality element of her claim.[2]

Finally, Allied argues that relator has not stated an IFCA claim with the particularity required by Rule 9(b), *i.e.*, allegations of "'the who, what, when, where, and how'" of the fraud. *Borsellini*, 477 F.3d at 507 (citations omitted). The Court disagrees. As alleged by relator, the "who" is Allied; the "what" is Allied's alleged failure to submit invoices with signed timesheets; the "when" is 2021-May 2023; the "where" is the City department to which Allied submitted the invoices without signed timesheets; and the "how" is Allied's alleged overbilling of the City through its submission of invoices without signed timesheets. In short, relator's claim withstands Rule 9(b) scrutiny.

**SO ORDERED.**                                              **ENTERED:  July 24, 2026**

**M. David Weisman**
**United States Magistrate Judge**

---

[2] Defendant argues that the City should be held to the following judicial admission it made in relator's state court case: "[the City] allowed Allied to submit electronic timesheets in 2021 and 2022, and . . . during this time [the City] did not enforce the requirement to submit handwritten time sheets." (ECF 42-9 ¶ 22.) "A judicial admission binds only in the litigation in which it is made." *Higgins v. Miss.*, 217 F.3d 951, 954–55 (7th Cir. 2000). "In any other suit . . . , it operates merely as an evidentiary admission; for remember that a judicial admission is in the nature of a waiver. A waiver is a deliberate relinquishment of a known right, and a waiver made for purposes of one lawsuit needn't have been intended to carry over to another." Thus, any judicial admission the City may have made in relator's state court suit is not binding here.  That said, because we are a resolving a Rule 12(b)(6) motion, we are generally bound by the facts alleged in the first amended complaint.  However, a focused motion pursuant to Rule 56 as to the materiality element of this cause of action may be appropriate given the City's position in the state litigation.  *See generally* Fed. R. Civ. P. 1 (requiring the rules of civil procedure to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")